In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00114-CR


______________________________




GWENDOLYN ANN FIELDS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 4th Judicial District Court


Dallas County, Texas


Trial Court No. MB05-48021-E




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Gwendolyn Ann Fields appeals her conviction for driving while intoxicated (DWI). She was
assessed to serve 180 days' jail confinement, but the sentence was suspended and Fields was placed
on community supervision for two years and fined $1,500.00. She challenges the factual sufficiency
of the evidence to support her conviction, contending the evidence failed to establish the source and
degree of intoxication at the time of the accident. We affirm her conviction.

I. APPLICABLE LAW

 A. Elements of Offense

 A person commits an offense if the person is intoxicated while operating a motor vehicle in
a public place. Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). "Intoxicated" means: (A) not
having the normal use of mental or physical faculties by reason of the introduction of alcohol, a
controlled substance, a drug, a dangerous drug, a combination of two or more of those substances,
or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more. Tex.
Penal Code Ann. § 49.01(2)(A), (B) (Vernon 2003).

 B. Standard of Review 

 In a factual sufficiency review, the appellate court views all the evidence in a neutral light
and determines whether the evidence supporting the verdict is so weak that the jury's verdict is
clearly wrong and manifestly unjust or whether the great weight and preponderance of the evidence
is contrary to the verdict. See Watson v. State, No. PD-0469-05, 2006 Tex. Crim. App. LEXIS 2040,
at *39 (Tex. Crim. App. Oct. 18, 2006); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000);
Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

II. ANALYSIS

 A. Evidence Presented at Trial

 Fields crashed her vehicle into a neighbor's parked car. The neighbor called 9-1-1, described
Fields as unsteady, and summoned officers to the scene. For about fifteen minutes, Fields
unsuccessfully tried to start her car, inspected the damage to both cars, went to her home a couple
of times (once to change clothes), and returned to the scene. She left the accident again, walking to
the neighborhood drug store to buy cigarettes, where Dallas police officers arrived at 11:40 p.m. and
spoke with Fields. After talking briefly with the cooperative but fumbling, disorganized, and
disheveled Fields, the officers transported her to the accident scene a few blocks away. Noticing that
Fields had bloodshot eyes, smelled of alcohol, and appeared quite disorganized, one of the
responding officers, Officer Brad Williams, contacted the DWI squad, from which Officer Larry D.
Allen arrived at the scene ten to fifteen minutes later. 

 After confirming that Fields was uninjured, Allen administered three standardized field
sobriety tests, all of which indicated that Fields was intoxicated. Officer Allen also noted the odor
of alcohol and Fields' bloodshot eyes. Fields explained that she had taken her hormone pill that day
and that she had only one vodka drink before she left her house. Based on these preliminary
observations and test results, Allen arrested Fields and brought her to the Dallas County jail. 

 After the fifteen-minute observation period, Allen again administered sobriety tests. In the
videotape of the interview and tests administered at the jail, Fields showed what Allen described as
significantly different behavior and performance than she did at the scene of the accident. While she
did perform better on the sobriety tests, she did demonstrate some deviation and was also unable to
correctly estimate thirty seconds. She also estimated the time at 10:00 p.m. when, in fact, it was
approximately 1:13 a.m. After having received the statutory warnings, Fields consented to an
Intoxilyzer test. The results of her two tests were 0.101 and 0.099. The tests were taken at
approximately 1:20 a.m.

 B. Evidence That Fields Was Intoxicated by Alcohol at Time of Accident


 On initial contact with Fields, Officer Williams noted that Fields smelled of alcohol, had
bloodshot eyes, and behaved in a disorganized, fumbling manner. He testified that his experience
led him to believe that she was intoxicated. 

 When Officer Allen arrived, he noted the same physical conditions in Fields. Fields
demonstrated clues of intoxication on each of the three standardized field sobriety tests administered
at the scene of the accident. Allen administered the horizontal gaze nystagmus (HGN) test and
characterized this test as the most reliable of the three standardized tests. He testified that Fields'
eyes showed the onset of nystagmus before Allen's stimulus reached the forty-five-degree angle. 
Allen also explained that Fields' eyes failed to smoothly track the stimulus as he moved it
horizontally. In fact, Fields demonstrated all six clues of intoxication on this test. Allen testified
that HGN, one of the several types of involuntary jerking of the eyes, is caused by alcohol and other
related depressants. 

 Two of eight clues in the walk-and-turn test indicate that a person is intoxicated. Fields
demonstrated four of the eight clues during this test. On the one-leg-stand test, Fields swayed and
used her arms for balance. Her performance yielded two of the four clues, indicating that she was
intoxicated. 

 Officer Allen testified that, based on Fields' condition, her performance on the sobriety tests,
and his experience in detecting when a person is intoxicated, Fields did not have the normal use of
her mental and physical faculties at the scene of the accident due to the introduction of alcohol into
her body. 

 C. Evidence of Other Source or Degree of Intoxication at Time of Accident

 Through cross-examination of the State's witnesses and through introduction of the
videotaped interview and sobriety tests, Fields presented evidence she had taken medication that
day. (1) She explained to officers at the scene of the accident that she had taken her hormone
medication. She explained during her videotaped interview that she takes hormone pills, allergy
medication, and acid reflux medication, apparently without regularity. However, within the past
twenty-four hours, she had only taken her hormone pill, her acid reflux medication, and some
acetaminophen. She also explained that she was tired, having only slept for about four hours the
previous night. 

 Fields failed to present evidence to support her position that her performance on the field
sobriety tests had been negatively affected by the amount and type of medication that she had taken
earlier that day. Nor does she present evidence regarding the effect that sleep deprivation would
have on her performance of the field sobriety tests. 

 Allen testified that certain medications can cause nystagmus, as can head injuries. He
explained that he interviewed Fields to determine whether she was a candidate for the HGN test. 
He concluded that she was a proper candidate for the HGN test, suggesting that the medications she
admitted to taking were not of the type that would impact her performance on the HGN test. Again,
Allen testified that HGN is produced as a result of alcohol or other depressants. 

III. CONCLUSION

 The evidence is factually sufficient to support the jury's finding of guilt beyond a reasonable
doubt. The State presented evidence that Fields smelled of alcohol very soon after the accident, that
Fields admitted to having consumed alcohol, and that field sobriety tests indicated that Fields was
intoxicated. The Intoxilyzer test revealed her blood alcohol content was in excess of .08. Officer
Allen testified that Fields had lost the normal use of mental and physical faculties due to the
introduction of alcohol into the body. The evidence that she took hormone and acid reflux
medication does not render the evidence factually insufficient here when no evidence suggests the
medication would have negatively impacted her performance on the sobriety tests. 

 We affirm the trial court's judgment.



 Jack Carter

 Justice


Date Submitted: November 20, 2006

Date Decided: November 28, 2006


Do Not Publish

1. Although the information charged that Fields was intoxicated by the use of alcohol, a
controlled substance, a drug, a dangerous drug, or a combination of such substances, the jury was
charged only in regard to the use of alcohol. There was no instruction concerning the synergistic
effect of the medication and alcohol. See Gray v. State, 152 S.W.3d 125 (Tex. Crim. App. 2004).